OPINION
Appellant, Ann Rapisarda, appeals from the December 21, 2000 judgment entry of the Geauga County Court of Common Pleas granting the motion for summary judgment of appellees, Chagrin Valley Athletic Club, Inc. ("CVAC") and Joan Machen ("Machen").
At her deposition, appellant testified that she contacted CVAC regarding swimming lessons for her daughter Bunny in May 1997. Appellant spoke to Machen, CVAC's athletic director, concerning the swimming lessons. During the course of that conversation, Machen mentioned that CVAC was seeking a yoga instructor, and asked appellant if she would be interested in interviewing for the position. Appellant agreed to interview for the position. She further testified that she signed a self-employment contract with CVAC and began working as a yoga instructor in approximately the spring of 1997. Appellant has never been a member of CVAC.
According to appellant's deposition testimony, she requested permission from Machen to attend a single session of a step aerobics class offered by CVAC. Appellant made this request after Machen had told appellant that her yoga classes were doing well and that Machen was pleased with appellant's performance as an instructor. Appellant further testified that she understood that permission to attend the class was "a performance gift for a job well done * * *."
On or about September 24, 1997, appellant attended a step aerobics class on appellee's premises. Appellant was not teaching a yoga class that day and was not on the premises in her capacity as a yoga instructor. In fact, appellant testified at her deposition that she did not teach any yoga classes at CVAC in September 1997.
Appellant also testified that, on September 24, 1997, she arrived at CVAC, at approximately 9:30 a.m., and went directly to the step aerobics class, which was already in progress. Appellant removed a single step ("the platform") from the workout room closet. Appellant testified that in the course of the class, she stepped on something sharp on the platform. Appellant glanced at the platform and did not notice a protrusion, so she continued with the aerobics routine. She claimed that, a short time later, her shoe caught on a sharp object and she fell backwards. As a result of this fall, appellant broke both of her wrists. After falling, appellant left CVAC and proceeded to a previously scheduled hair appointment.
On April 22, 1999, appellant filed a complaint which was subsequently dismissed by the trial court, on April 17, 2000. In a new complaint, filed on May 8, 2000, against CVAC and Machen, appellant alleged that CVAC had negligently provided her with a faulty platform and that Machen had failed to properly inspect the equipment. On November 16, 2000, appellees moved for summary judgment contending that appellant was a licensee and that she had failed to allege any willful or wanton misconduct on the part of appellees. Appellees' motion was granted by the trial court, on December 21, 2000.
Appellant has filed a timely appeal and makes the following assignments of error:
 "[1.] The trial court erred in granting [appellee's] motion for summary judgment because [appellant] was an independent contractor on the premises within the scope of her permitted access to the premises and thereby an invitee.
 "[2.] The trial court erred in granting [appellee's] motion for summary judgment because a jury could have found that [appellee] negligently failed to inspect its aerobics equipment."
 The critical issue for this case is the determination of whether appellant was an invitee or licensee at the time she was injured. The owner of the premises owes an invitee a duty of ordinary care. Heston v. Gallucci
(Sept. 25, 1998), Lake App. No. 97-G-2101, unreported, 1998 WL 682375, at 1. A licensee has a cause of action only if the premises owner wantonly or willfully caused the injury. Id.
Appellant suggests, in her first assignment of error, that she was on the premises as an independent contractor at the time of her accident; therefore, she should be treated as a business invitee. The general rule in Ohio is that if an independent contractor, hired by the owner of premises, is injured on the job, the independent contractor is treated as a business invitee. Taylor v. B.P. Exploration Oil, Inc. (1994),96 Ohio App.3d 318, 322; Strother v. Novak Sons, Inc. (July 27, 2000), Cuyahoga App. Nos. 76306, 76385, unreported, 2000 WL 1036236, at 2. In the instant case, however, appellant was not injured while acting in her capacity as a yoga instructor. On the day that her accident occurred, appellant did not teach a yoga class. She arrived at CVAC at approximately 9:30 a.m. and went directly to the step aerobics class, and she left CVAC immediately after she fell. There is no indication in the record that she was scheduled to teach a yoga class that day. To the contrary, she testified that she did not teach any yoga classes in the month of September 1997. In short, appellant was injured while pursuing a leisure activity unrelated to her employment. Because appellant was not injured on the job, her alleged independent contractor status has no bearing on the determination of whether she was an invitee or licensee. Therefore, a more general analysis of the distinctions between invitees and licensees is required.
The Supreme Court of Ohio has held that "`(b)usiness invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner.'" Provencherv. Ohio Dept. of Transp. (1990), 49 Ohio St.3d 265, 266, citing Scheibelv. Lipton (1951), 156 Ohio St. 308, 328-329. The benefit conferred by an invitee "must take some tangible form, whether economic or otherwise."Carpenter v. Columbus Motor Lodge, Inc. (1990), 67 Ohio App.3d 589, 593.
In the case sub judice, this court is unable to discern a tangible benefit to appellee as a result of appellant attending the step aerobics class. At her deposition, appellant stated that "[i]t was a gift to attend this class. It was a, I considered it a performance gift for a job well done, I will allow you to attend this class." Appellant's right to attend this class was not part of the compensation package that she negotiated with appellee when she was hired. Appellant requested Machen's permission to attend the class, and Machen agreed to permit appellant to attend the class. Appellant indicated she was not expected to perform additional work as a result of being permitted to attend this class, nor was she asked to pay any fees; therefore, no tangible benefit has been shown to have accrued to CVAC. Appellant also indicated that she viewed the class as a single experience and had no intention to continue her participation therein.Appellant is correct in suggesting that not all plaintiffs who have been deemed invitees by the courts of Ohio have conferred a direct, tangible benefit upon the premises' owner. The factual circumstances of those cases, however, can be distinguished from the case at hand. In Bowins v. Euclid Gen. Hosp. Ass'n (1984),20 Ohio App.3d 29, 30, the Eighth Appellate District held that the visitor of a patient in a hospital was an invitee, although such visitors do not necessarily provide a direct, tangible benefit to the hospital. In arriving at that conclusion, the court noted that no one would patronize a hospital which did not permit visitors and, "[i]n essence, affording patients visitors is simply part of the business of a hospital." Id. In short, permitting visitors is essential to the long-term viability of a hospital.
Similarly, in Martin v. Konstam (1992), 62 Ohio Misc.2d 507, paragraph one of the syllabus, the Hamilton County Municipal Court held that "[a] tenant's invited guests, using an elevator maintained by the landlord, are business invitees of the landlord * * *." The court observed that although a landlord accrues no direct benefit from the presence of a tenant's guests, a landlord who prohibited visitors might have great difficulty in renting his apartments. Id. at 511.
In the instant case, appellant argues that CVAC received the benefit of appellant's work as a yoga instructor. However, appellant's own testimony made it clear that she considered the right to attend the step aerobics class a gift, and that her work as a yoga instructor was in no way dependent upon her receiving permission to attend the class. Further, there is nothing in the record to suggest that permitting appellant to attend the class provided CVAC any benefits in terms of improved member satisfaction. Nor is there any indication that she or others were more or less likely to purchase a membership at CVAC if appellant were permitted to attend the step aerobics class. Therefore, we conclude that CVAC received no tangible benefit from permitting appellant to attend the step aerobics class and that she was on the premises at the time of her accident as a licensee.
Because appellant was a licensee, CVAC would be liable only if it wantonly or willfully caused her injury. This court has previously defined wanton misconduct as "`"an entire absence of all care for the safety of others and an indifference to consequences. * * * It implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor.'" Peoples v. Willoughby
(Dec. 31, 1990), 70 Ohio App.3d 848, 851. Willful misconduct implies intent that relates to the commission of the wrongful conduct. Id.
In this case, there is conflicting testimony as to the regularity of CVAC's cleaning and inspecting the aerobic steps. However, appellant has not linked any failure to frequently clean and inspect the aerobic steps to the alleged defect. Specifically, appellant stated she failed to see any defect the first time she felt something catch her tennis shoe. She said, "There was a pull on my shoe that made me hesitate and I looked at the step, I did not see anything, but I knew that there was hesitation." Thus, there is no evidence that the alleged defect would have been detected in an inspection by appellee. Further, the report of appellant's expert is fatally flawed because he never viewed the defective step. Hence, while he might opine that inspections should have been more frequent, he could not opine that the defect was discoverable or caused the fall. Given those circumstances, even if CVAC had failed to inspect the steps, there was no evidence that its actions rose to the level of wanton misconduct.
In view of the foregoing, we conclude that appellant's first assignment of error lacks merit. Appellant was a licensee, not an invitee, and no wanton and willful misconduct was shown. The trial court did not err in granting appellees' motion for summary judgment because there is no genuine issue of material fact with respect to any of appellant's claims.
In her second assignment of error, appellant alleged that CVAC was negligent for failing to inspect the platform. This assignment of error is moot because appellant was a licensee, not an invitee; therefore, appellant would have had to demonstrate that CVAC engaged in wanton or willful misconduct, not simply that CVAC was negligent.
For the foregoing reasons, the judgment of the trial court is affirmed.
JUDGE ROBERT A. NADER, FORD, P.J., CHRISTLEY, J., concur.